## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RICHARD JOHNSON, individually and on behalf of all others similarly situated,** | No: 7:21-cv-04437 (PMH)(JCM) |
| **Plaintiff,** | |
| **-against-** | |
| **ENSITE USA, INC.,** | |
| **Defendant.** | |

### JOHNSON'S OPPOSITION TO ENSITE'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS OR TRANSFER

Dated: August 27, 2021
      New York, New York

Respectfully submitted,

/s/ *Frank J. Mazzaferro*

Frank J. Mazzaferro

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Frank J. Mazzaferro
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch, *pro hac vice forthcoming*
11 Greenway Plaza #3025
Houston, Texas 77046
Telephone: (713) 877-8788

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 3

   A.   Johnson's Employment with EnSite ....................................................................... 3

   B.   The *Doyle* Lawsuit .................................................................................................. 3

   C.   Johnson's Lawsuit ................................................................................................... 4

III.    AUTHORITIES AND ARGUMENTS ..................................................................... 4

   A.   EnSite Cannot Compel Arbitration ......................................................................... 4

       1.  EnSite waived its right to arbitration ................................................................ 4

           i.     *Substantial time has elapsed* .................................................................. 5

          ii.    *Substantial litigation has already occurred* ........................................... 5

         iii.   *Compelling arbitration would prejudice Johnson* .................................. 8

       2.  EnSite's arbitration agreements are unenforceable .................................................. 9

   B.   EnSite's Request to Strike Class Allegations is Premature .......................................... 12

   C.   Johnson's Individual Claim Exceeds $75,000 ............................................................ 14

   D.   EnSite Fails to Establish That Transfer is Appropriate ............................................... 16

           i.     *The convenience of witnesses does not favor transfer* ............................... 17

          ii.    *The location of relevant documents does not warrant transfer* ................ 18

         iii.   *The SDNY is best suited to adjudicate NYLL Claims* ................................. 18

         iv.   *The remaining factors weigh in Johnson's favor* ...................................... 19

IV.    CONCLUSION ......................................................................................................... 19

**<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>**................................................................................**Page Number**

*Aerotel Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189 (S.D.N.Y.2000) ............................... 18

*Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC,*
  124 F. Supp. 3d 237 (E.D.N.Y. 2015) ................................................... 15

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.,*
  474 F. Supp. 2d 481 (S.D.N.Y. 2007) ................................................. 16

*Bank of Am., N.A. v. Ocean Performance, Inc.*, No. 3:10CV1829 JBA,
  2013 WL 943743 (D. Conn. Mar. 11, 2013) ......................................... 12

*Belfiore v. Procter & Gamble Co.*, 94 F.Supp.3d 440 (E.D.N.Y. 2015) ..................... 12

*Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914 (11th Cir. 2014) ........................... 11

*Capitol Records, LLC v. VideoEgg, Inc.*, 611 F.Supp.2d 349 (S.D.N.Y.2009) ........... 17

*Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214 (2d Cir. 2006)) ............. 16

*Doe v. Trump Corp.*, 453 F. Supp. 3d 634 (S.D.N.Y. 2020) ............................... 6,7,9

*ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542 (S.D.N.Y. 2008) ....................... 18

*Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-21244-CIV,
  2015 WL 9592535 (S.D. Fla. Dec. 31, 2015)....................................... 10,11

*Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613 (S.D.N.Y. 2016) ...... 17,18,19

*Fritz v. Realpage Inc.*, No. 20-CV-7055-CJS-MJP,
  2021 WL 3700434 (W.D.N.Y. Aug. 20, 2021) ................................... 16,18

*Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, No. 16 CIV. 7126 (GBD),
  2018 WL 6618389 (S.D.N.Y. Dec. 18, 2018) ......................................... 8

*Garcia v. Execu\Search Grp., LLC*, No. 17CV9401,
  2019 WL 689084 (S.D.N.Y. Feb. 19, 2019) ......................................... 12

*Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807 (S.D.N.Y. 2019) .................. 16

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) ................... 9

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ...................................... 12

ii

*Haley v. Tchrs. Ins. & Annuity Assoc. of Am.*, 377 F. Supp. 3d 250 (S.D.N.Y. 2019) ............... 12

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ........................................... 9

*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) ..... 2,10,11

*In re Crysen/Montenay Energy Co.,* 226 F.3d 160 (2d Cir.2000) ................................. 6

*In re Mirant Corp.*, 613 F.3d 584 (5th Cir. 2010) ......................................... 6

*In re Namenda Direct Purchaser Antitrust Litig.*,
331 F. Supp. 3d 152 (S.D.N.Y. 2018) ................................................. 14

*Kramer v. Hammond,* 943 F.2d 176 (2d Cir.1991) ...................................... 8,9

*Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
626 F.3d 156 (2d Cir. 2010) ........................................................ 6,8

*Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016) ..................................... 6

*Mattel, Inc. v. Procount Bus. Servs.*, No. 03 Civ. 7234,
2004 WL 502190 (S.D.N.Y. Mar. 10, 2004) ........................................... 19

*Mayfield v. Asta Funding,* 95 F.Supp.3d 685 (S.D.N.Y.2015) ........................... 12

*Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.*,
376 F. App'x 70 (2d Cir. 2010) .................................................... 6,7,8

*NBA Properties, Inc. v. Salvino, Inc.*, 2000 WL 323257 (S.D.N.Y. March 27, 2000) ............... 18

*OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593 (S.D.N.Y. 2020) .................. 9,10,11

*Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597 (S.D.N.Y. 2020) ..................... 5

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103 (2d Cir. 1997)............................. 5,6,7

*Renteria-Camacho v. DirecTV, Inc.*, 175 F. Supp. 3d 1308 (D. Kan. 2016) ................... 8

*Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503(S.D.N.Y. 2015) ........................... 12

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ...................................... 14

*Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421 (S.D.N.Y. 2018) ............... 18

*Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394 (2d Cir.2003) ..................... 15

iii

*Travis v. Navient Corp.*, 460 F. Supp. 3d 269 (E.D.N.Y. 2020) .................................................. 12

*Trustees of Loc. 531 Pension Fund v. Al Turi Landfill, Inc.*, No. 08CV1272ARRJMA,
    2010 WL 11627389(E.D.N.Y. Sept. 20, 2010) ......................................................... 6

*Wyler-Wittenberg v MetLife Home Loans, Inc.*, 899 F Supp 2d 235 (EDNY 2012) ................... 16

*Williams v. Securitas Sec. Servs. USA, Inc.*, No. CIV.A. 10-7181,
    2011 WL 2713741 (E.D. Pa. July 13, 2011) ......................................................... 10

*Zamboni v. Pepe W. 48th St. LLC*, No. 12 CIV. 3157 AJN JCF,
    2013 WL 978935 (S.D.N.Y. Mar. 12, 2013) ......................................................... 9

## Statutes

28 U.S.C. § 1332(a) ................................................................................................. 15

Fed. R. Civ. P. 12(f) ................................................................................................. 12

N.Y. Lab. Law § 191 ................................................................................................. 15,17

N.Y. Lab. Law § 195(1) ................................................................................................. 17,18,19

N.Y. Lab. Law § 195(3) ................................................................................................. 17,18,19

## I.  INTRODUCTION

EnSite USA, Inc. ("EnSite") litigated with Richard Johnson ("Johnson") for nearly two years. It cannot now seek arbitration, particularly since any alleged arbitration agreement was obtained through impermissible communications with Johnson outside his counsel's knowledge.

On August 15, 2019, Johnson joined *Doyle v. EnSite USA, Inc.*, a Fair Labor Standards Act ("FLSA") collective action. Until May 19, 2021, when *Doyle* was decertified, EnSite engaged in substantial discovery, motion practice, and two mediations. Until it filed the instant motion, EnSite never indicated any intention to arbitrate Johnson's claims. Despite producing well over 800 documents, EnSite neither produced nor disclosed anything suggesting Johnson might be subject to arbitration.

Now, approximately twenty-three months later, EnSite suddenly wants to arbitrate. EnSite's substantial delay and the extensive litigation history in *Doyle* demonstrates EnSite's commitment to litigating Johnson's claims in the judicial forum. To allow EnSite to invoke arbitration at this late date would undercut the very rationale—speed and efficiency—that supports the strong presumption in favor of arbitration in the first place.

Alternatively, the arbitration "agreements" are unenforceable as they are improper and misleading communications. The instant matter presents a unique set of facts which require the agreements be set aside or discovery be conducted related to their development and roll-out.

On March 12, 2018, Johnson's Counsel sent EnSite a letter outlining potential overtime claims on behalf of a collective of EnSite's Inspectors. The parties engaged in pre-litigation settlement discussions and the informal exchange of documents where Johnson was identified as a potential plaintiff. Settlement discussions failed and the *Doyle* collective action was filed.

1

On May 15, 2019, a motion for conditional certification was filed in *Doyle*. The parties ultimately stipulated to notice and filed that stipulation for approval with the court on **July 5, 2019**. **Six days** later—July 11, 2019—EnSite gave Johnson the first arbitration agreement which contains a class and collective waiver.

Almost <u>two years</u> since the start of Johnson's employment, <u>less than a month</u> after *Doyle*'s motion and <u>days after</u> submission of the party's <u>stipulation</u>, EnSite contacted a known potential plaintiff and current employee to cut of his right to proceed in court with an arbitration "agreement." Johnson was provided with the same agreement again in June 2020, when he was an active plaintiff in *Doyle*. EnSite did not provide either agreement to Johnson's counsel (even when it *knew* he was represented by counsel).

The timing of EnSite's decision to require Johnson to sign arbitration agreements is highly suspect. It is further concerning that EnSite never bothered to produce the agreements to Johnson's Counsel prior to its Motion. The agreements lacked information regarding *Doyle* and how Johnson's rights would be affected by agreeing to arbitration considering *Doyle*.

EnSite provided no background into the development or roll out of Johnson's agreement. The facts, as they are, require discovery related to EnSite's intent so the Court can determine whether EnSite engaged in improper communications.

The remaining issues should be denied as EnSite did not meet its requisite burdens. EnSite failed to prove it would be impossible for Johnson to certify a Rule 23 Class based on numerosity. EnSite's only support is conclusory statements from an interested witness and outdated information. Considering Johnson's opportunity to apply for an amendment, these are merely *proposed* classes based on pre-discovery information. Fact-based numerosity arguments should be

made at the appropriate time, i.e., when a motion for class certification is made. To the extent the Court finds otherwise, discovery should be conducted before making a ruling on this issue.

EnSite further fails to establish that transfer to the Southern District of Texas is appropriate. That case is effectively over and, in any event, most of the factors weigh in Johnson's favor. Including the heavily weighed factors such as Plaintiff's Choice and the Locus of Operative Facts. The three factors identified by EnSite are neutral or, at best, carry little weight.

## II.    BACKGROUND

### A.    Johnson's Employment with EnSite

EnSite employed Johnson as a Welding Inspector from approximately January 2017 to December 2019. Dkt. No. 3, ¶ 21. In 2018, Johnson performed work for EnSite in Yorktown, New York. *Id*. EnSite paid Johnson a day rate regardless of the number of hours he worked in a week. *Id*. ¶ 76. Johnson was not permitted to record all the hours he worked in a day. *Id*. ¶ 75.

### B.    The *Doyle* Lawsuit

On March 12, 2018, Leslie Doyle ("Doyle") sent EnSite a letter outlining overtime claims against the company. Declaration of Frank J. Mazzaferro ("Mazzaferro Decl.") ¶ 4. The parties entered into a tolling agreement and exchanged pre-litigation discovery related to those claims. Exhibit[1] ("Ex.") A, Tolling Agreement. Johnson was identified as a potential plaintiff in pre-litigation discovery. Mazzaferro Decl. ¶ 5. Despite pre-litigation discussion, the parties were not able to reach a resolution. *Id*. ¶ 6.

On August 24, 2018, Doyle filed suit against EnSite on behalf of himself and similarly situated Inspectors who were paid a day rate. *Doyle v. EnSite USA, Inc.*, No. 4:18-cv-02941, Dkt. No. 1 (Aug. 24, 2018, S.D. Tex.). On May 17, 2019, Doyle filed a motion for conditional

---

[1] All exhibits are attached to the Declaration of Frank J. Mazzaferro.

certification pursuant to the FLSA. *Id.* at 26. Shortly thereafter, on July 5, 2019, the parties submitted a stipulation for court approval conditionally certifying a collective of Inspectors paid a day rate. *Doyle*, No. 4:18-cv-02941, Dkt. No. 27. Johnson filed his consent to join *Doyle* on August 15, 2019. *Doyle*, No. 4:18-cv-02941, Dkt. No. 32-1.

At the conclusion of the opt-in period, over 70 individuals had joined the case who worked as Safety Inspectors, Assistant Chief Inspectors, Gas/General/Utility Inspectors, Lead/Senior Inspectors, Pipeline Inspectors, Electrical/EI Inspectors, Material Inspectors/Coordinators, Mechanical Inspectors, and Welding Inspectors. Ex. B, EnSite Mt. for Decert. at 1-2.

During litigation, the parties exchange substantial discovery and participated in two unsuccessful mediations. Mazzaferro Decl. ¶ 7. On April 23, 2021, EnSite moved to decertify the collective and for partial summary judgment. *Id.*; *Doyle*, No. 4:18-cv-02941, Dkt. No. 65 (Mt. for Summary Judgment). On May 19, 2021, the court in *Doyle* granted decertification primarily on the basis that:

> "Doyle and the Opt-Ins have many different job titles and duties, noting that Doyle's official title was 'Safety Inspector,' and the Opt-Ins' job titles are spread over nine other inspection positions, with the highest concentrations being Chief Inspectors, Gas/General/Utility Inspectors, and Welding Inspectors."

Ex. 13, EnSite Mt. for Decert. at 12. Since decertification, individual and representative actions have been filed against EnSite. Mazzaferro Decl. ¶ 11.

On August 23, 2021, the *Doyle* court granted EnSite's partial motion for summary judgment, dismissing the only remaining plaintiff's individual FLSA claim on the basis that he failed to bring his claim within the relevant statute of limitations. Ex. D, Order Granting Partial Summary Judgment. The Court indicated it intends to dismiss Doyle's state law claims for lack of jurisdiction. *Id.*

4

C.      **Johnson's Lawsuit**

On May 17, 2021, Johnson filed this case against EnSite bringing individual overtime claims under the FLSA and claims under the New York Labor Law pursuant to Fed. R. Civ. P. 23:

- Failure to Pay Timely Wages pursuant to NYLL §191 (Dkt. No. 1, at 10);
- Failure to Pay Overtime Wages (*Id.*);
- Failure to Provide Accurate Wage Statements pursuant to NYLL §195(3) (*Id.* at 11); and
- Failure to Provide Accurate Wage Notices pursuant to NYLL §195(1) (*Id.*).

On May 26, 2021, Johnson filed his First Amended Complaint ("FAC") alleging representative claims under the FLSA on behalf of *only* Welding Inspectors. Dkt. No. 3, ¶ 44.

**III.   AUTHORITIES AND ARGUMENTS**[2]

A.      **EnSite Cannot Compel Arbitration After Litigating with Johnson in Court for Nearly Two Years.**

Even if an arbitrator could determine the scope of the EnSite's arbitration agreements ("Agreements"), EnSite waived its right to arbitration, or, in the alternative, the Agreements are improper and misleading communications.

**1.   EnSite waived its right to arbitration**

**This Court** determines "whether, under the judge-made principle of litigation-conduct waiver, a party is barred from asserting its right to arbitration." *Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 614 (S.D.N.Y. 2020). "[A] party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party." *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (citation omitted).

In determining whether a party waived its right to arbitration, the Court should consider such factors as "(1) the time elapsed from the commencement of litigation to the request for

---

[2] Johnson consents to removal of CAFA jurisdiction.

arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." *PPG Indus., Inc.*, 128 F.3d at 107. "There is no bright-line rule" and "…the determination of waiver depends on the particular facts of each case." *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.,* 376 F. App'x 70, 72 (2d Cir. 2010) (citing *In re Crysen/Montenay Energy Co.,* 226 F.3d 160, 162–63 (2d Cir.2000)).

### i.   *Substantial time has elapsed*

At the absolute latest, the relevant period started on August 15, 2019, when Johnson filed his consent to join *Doyle*. EnSite's motion to compel arbitration wasn't filed until July 26, 2021, one year and eleven months (or twenty-three months) after Johnson joined *Doyle*. This elapse is well beyond what courts deem as appropriate. *See e.g.*, *Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 644 (S.D.N.Y. 2020), aff'd, 6 F.4th 400 (2d Cir. 2021) (eight month elapse substantial); *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159–60 (2d Cir. 2010) (eleven month elapse weighed in favor of waiver); *Trustees of Loc. 531 Pension Fund v. Al Turi Landfill, Inc.*, No. 08CV1272ARRJMA, 2010 WL 11627389, at *4 (E.D.N.Y. Sept. 20, 2010) ("…fifteen-month time period from the filing of the complaint to defendant's indication of its intent to make a motion is more significant"); *Bank of Am., N.A. v. Ocean Performance, Inc.*, No. 3:10CV1829 JBA, 2013 WL 943743, at *2 (D. Conn. Mar. 11, 2013) (twenty month delay significant); *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (seventeen month ellipse weighs in favor of waiver); *In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010) (eighteen months). This factor supports waiver.

### ii.   *Substantial litigation has already occurred*

*Doyle* was litigated up through decertification. Prior to filing the *Doyle* Complaint, the parties engaged in pre-litigation discovery and settlement discussion. During the course of *Doyle*,

plaintiff briefed conditional certification,[3] the parties stipulated to conditional certification,[4] notice was issued, the parties submitted multiple scheduling orders to the court,[5] exchanged discovery demands and responses,[6] over 800 documents were produced regarding Doyle and the opt-ins employment,[7] detailed spreadsheets related to the hours and pay received for Doyle and the opt-in plaintiffs were produced,[8] the parties participated in two mediations,[9] the parties briefed a discovery dispute,[10] and EnSite moved for (and obtained) decertification.[11]

EnSite's failure to compel arbitration at **any point** after Johnson opted into *Doyle* and the amount of litigation conducted after Johnson opted in demonstrates EnSite's commitment to the judicial forum. It does not matter than the litigation conduct occurred in a technically separate matter. *See e.g.*, *PPG Indus., Inc.*, 128 F.3d at 109 ("By engaging in discovery and filing substantive motions in [a different] action, [the party moving to compel] evidenced a preference for litigation that supports a finding of waiver in [this] action"); *see also*, *Renteria-Camacho v. DirecTV, Inc.*, 175 F. Supp. 3d 1308, 1312 (D. Kan. 2016) (defendant's motion to compel arbitration denied in new matter filed by plaintiff who was an opt-in plaintiff in a previously decertified matter); *NCR Corp.*, 376 F. App'x at 72 ("The amount of litigation, including, *inter alia,* discovery and scheduling conferences, motions addressing choice-of-law and various defenses, and several motions for summary judgment, demonstrates a substantial commitment to the judicial forum"); *Trump Corp.*, 453 F. Supp. at 644 (waiver where "discovery between the parties has otherwise been pursued aggressively"); *Louisiana Stadium*, 626 F.3d at 159–60 (even

---

[3] *Doyle*, No. 4:18-cv-0294, Dkt. No. 26.
[4] *Id*. at 28.
[5] *Id*. at 20, 57.
[6] Mazzaferro Decl. ¶ 7.
[7] *Id*. ¶ 8.
[8] *Id*. ¶ 9.
[9] *Id*. ¶ 9.
[10] Ex. E, Plt. Apr. 27, 2020, letter to Court.
[11] *Id*. at 60, 72.

where little discovery was conducted, substantial motion practice indicated waiver); *Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, No. 16 CIV. 7126 (GBD), 2018 WL 6618389, at \*4 (S.D.N.Y. Dec. 18, 2018) (waiver of arbitration agreement where moving party "…participated in an initial pretrial conference and a subsequent status conference, filed a proposed case management plan and scheduling order, requested a stay of discovery and an extension of the discovery deadlines, and exchanged Rule 26(a) disclosures with Plaintiffs. It also served and responded to interrogatories, requests for production of documents, and requests for admission"); *Bank of Am., N.A.,* 2013 WL 943743, at \*2 (waiver where "plaintiff served discovery requests, deposed two witnesses, and retained an expert").

EnSite's substantial history of using the judicial system to adjudicate Johnson's claims demonstrates that this prong weighs towards waiver.

### iii.    *Compelling arbitration would prejudice Johnson*

The Second Circuit has found prejudice where a party "…delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." *NCR Corp.*, 376 F. App'x at 72. "[P]rejudice need not be substantive, and 'can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes unnecessary delay or expense.'" *Bank of Am., N.A.*, 2013 WL 943743, at \*3 (quoting *Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir.1991)). "No bright line defines [non-substantive] prejudice—neither a particular time frame nor dollar amount automatically results in such a finding—but it is instead determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances." *Kramer,* 943 F.2d at 179.

EnSite waited approximately twenty-three months to compel arbitration and at no time notified Johnson's Counsel that he may be subject to arbitration or otherwise act in a manner consistent with the desire to arbitrate Johnson's claims. The parties have undergone over three years of litigation, both parties have exerted substantial time and effort. This includes the time and effort expended on filing the instant action. To allow EnSite to invoke arbitration at this late date would "undercut the very rationale—speed and efficiency—that supports the strong presumption in favor or arbitration in the first place." *Kramer*, 943 F.2d at 179. *See also*, *Trump Corp.*, 453 F. Supp. 3d at 645.

### 2.   EnSite's arbitration agreements are unenforceable

"Courts have 'discretionary authority to oversee the notice-giving process' in an FLSA collective action." *OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 600–02 (S.D.N.Y. 2020) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id*. (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). "The same principles that govern communications with putative class members in a class action under Rule 23 also apply to communications with potential opt-in plaintiffs in a collective action brought under the FLSA." *Id.* (quoting *Zamboni v. Pepe W. 48th St. LLC*, No. 12 CIV. 3157 AJN JCF, 2013 WL 978935, at *2 (S.D.N.Y. Mar. 12, 2013)). "A court therefore must examine the context in which the communications were made and the effect of the communications' in determining whether, and how much, communication should be restricted." *Id*. (citation omitted).

9

Under this theory, courts are permitted to deem an arbitration agreement unenforceable where, like here, it was an improper and misleading communication with a putative plaintiff. *See e.g.*, *Id.*; *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005); *Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-21244-CIV, 2015 WL 9592535, at *4 (S.D. Fla. Dec. 31, 2015); *Williams v. Securitas Sec. Servs. USA, Inc.*, No. CIV.A. 10-7181, 2011 WL 2713741, at *3 (E.D. Pa. July 13, 2011).

EnSite knew of Johnson's potential overtime claim by March 2018. Johnson was employed with EnSite starting in or around January 2017. On May 17, 2019, a motion for conditional certification was filed in *Doyle*. Two years after Johnson started work, but just two months after *Doyle's* motion for conditional certification was filed, EnSite required Johnson—a prospective member of the collective—to sign an agreement purporting to waive his rights to pursue class or collective claims. The second agreement provided to Johnson occurred while he was an active plaintiff in *Doyle*.

Despite years of litigation and discovery in *Doyle*, EnSite did not disclose the Agreements prior to filing the instant Motion. These actions are highly suspect. "A court therefore must examine the context in which the communications were made and the effect of the communications' in determining whether, and how much, communication should be restricted." *OConner*, 444 F. Supp. 3d at 600–02 (S.D.N.Y. 2020) (quotation omitted); *see also In re Currency Conversion*, 361 F. Supp. 2d at 253 ("[W]hen a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization.")

EnSite offered nothing that would allow the Court to make its determinations. Discovery must be conducted to determine when an arbitration policy was instituted, who was involved in

drafting/administering the agreements, how the policy was introduced, whether continued employment was contingent on signing the agreement,[12] how long a plaintiff had to sign the agreement and so forth. "Because FLSA plaintiffs must opt-in, unsupervised, unilateral communications with those potential plaintiffs can sabotage the goal of the FLSA's informed consent requirement by planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of 'facts.'" *Billingsley*, 560 F. App'x at 923; *see also Espinoza*, 2015 WL 9592535, at *6 (requiring discovery related to defendants' arbitration policy formulation and rollout to determine defendants' intent); *OConner*, 444 F. Supp. 3d at 603 (same).

Along with EnSite's suspect timing, the Agreements contain additional red flags such as: (1) the absence of information regarding the pending *Doyle* litigation; (2) the effect of arbitration on the ability to participate; or (3) the ramifications in the event *Doyle* was decertified. *OConner*, 444 F. Supp. 3d at 603 ("This communication with a putative plaintiff was improper and misleading because defendant asked plaintiffs to sign the Arbitration Agreements without disclosing the pendency of this litigation, the Arbitration Agreements are unenforceable as unconscionable"); *see also*, *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 252 ("[T]his Court holds that [defendants] cannot enforce the arbitration clause because [defendants] possessed information regarding [the pending litigation] which they withheld from their cardholders."); *Billingsley*, 560 F. App'x at 923 ("District courts' corrective actions have included refusal to enforce arbitration agreements instituted through improper means and where the timing of the execution of those agreements was similar to the post-filing, pre-certification timing in this case.") (listing cases).

---

[12] Ensite's Motion states that "EnSite did not condition Plaintiff's further or future employment on his assent to the terms in the Arbitration Agreements." Dkt. No. 11 at 15. This unsupported statement requires discovery.

**B.      EnSite's Request to Strike Class Allegations is Premature**

EnSite argues Johnson cannot meet the numerosity requirement of Rule 23. It is unclear what procedural mechanism EnSite utilizes to make this request. Presumably, EnSite moves to strike Johnson's class allegations pursuant to Rule 12(f). *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").

But to succeed on a motion to strike class allegations, "a defendant must 'demonstrate from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery.'" *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (quoting *Mayfield v. Asta Funding,* 95 F.Supp.3d 685, 696 (S.D.N.Y.2015)). Motions to strike "are disfavored and rarely granted because they require 'a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Belfiore v. Procter & Gamble Co.*, 94 F.Supp.3d 440, 447 (E.D.N.Y. 2015).

"[A]bsent [] exceptional circumstance, a motion to strike class allegations is generally 'procedurally premature.'" *Haley v. Tchrs. Ins. & Annuity Assoc. of Am.*, 377 F. Supp. 3d 250, 272 (S.D.N.Y. 2019); *see also*, *Garcia v. Execu|Search Grp., LLC*, No. 17CV9401, 2019 WL 689084, at *4 (S.D.N.Y. Feb. 19, 2019) ("[defendant's] motion to strike based on the failure to satisfy Rule 23(a)'s prerequisites is procedurally premature and denied without prejudice to opposing class certification on these grounds with the benefit of a complete factual record"). The exception to the rule is where the motion addresses issues separate and apart from issues decided on class certification. *See Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020).

12

Here, Johnson brings four NYLL claims pursuant to Rule 23. Dkt. No. 1, §§ 90-103. The claims are on behalf of Inspectors employed by EnSite during the period May 2015 through the date of final judgment. *Id.* at § 58.

EnSite argues Johnson will be unable to meet the numerosity requirement of Rule 23 because there are only 11 prospective class members. This information is based on a pre-litigation spreadsheet produced in April 2018 ("2018 Spreadsheet") for settlement discussions. EnSite further relied on an unsupported statement made by Kimberly Braswell. Ms. Braswell's declaration is particularly troubling as she does not indicate her understanding of the claims,[13] the class definitions, or what she reviewed to make her "determination."

As there are no "exceptional" circumstances, EnSite's arguments are premature. First, the 2018 Spreadsheet was not produced in response to a request for production during litigation, it was produced informally. It is unauthenticated and was created by EnSite to determine who EnSite deemed to be entitled to possible overtime recovery based on Doyle's demand letter. No document produced during the *Doyle* litigation addresses prospective class members in the instant action.

Johnson's proposed class is different from the one in *Doyle*. *Doyle* sought certification for Inspectors *paid a day rate*. Johnson's proposed class does not necessarily turn on how an Inspector was paid. Johnson alleges Inspectors were not permitted to report all hours worked. EnSite changed its day rate policy after getting sued in *Doyle*, so there will be Inspectors who were paid differently than those at issue *Doyle*.

Johnson's NYLL § 191 timely payment claim requires the Court to determine whether prospective class members were manual workers and not paid in accordance with the statute's weekly requirements. Discovery could reveal EnSite employed additional employees beyond the

---

[13] EnSite's Motion barely, if at all, mentions Johnson's NYLL §§ 191 or 195 claims. Even when determining damages. This demonstrates a fundamental disconnect between the FAC and EnSite's understanding of the claims.

Inspector title who worked in New York and were not paid in accordance with § 191. If they are manual workers, they would fall within a potential class. "It is well-established that a certifying court 'is not bound by the class definition proposed in the complaint.'" *In re Namenda Direct Purchaser Antitrust Litig*., 331 F. Supp. 3d 152, 210 (S.D.N.Y. 2018) (quoting *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)). Because courts have broad discretion over class a class's definition and are obligated to reassess class rulings as the case develops, it may be appropriate for Johnson to modify the FAC's class definition based on discovery. *See Id*. at 212 ("I see no reason to disregard the class definition that [p]laintiffs propose in their motion for class certification simply because it expands upon the definition found in the Amended Complaint"). This is especially true as no case management plan has been set by the Court and Johnson can apply to the Court to amend his Complaint based on discovery.

EnSite has failed to establish that it would be impossible for Johnson to obtain certification. Discovery will guide Johnson to take the appropriate procedural steps and EnSite can raise objections to class certification in its opposition to Johnson's motion. To the extent the Court finds these issues should be expedited, Johnson respectfully requests discovery to determine the scope of the class and whether an amendment to Johnson's Complaint is necessary.

### C.     Johnson's Individual Claim Exceeds $75,000

In a footnote, EnSite argues diversity jurisdiction is not proper because Johnson cannot meet the $75,000 threshold. Dkr. No. 11, at 11 n2. EnSite provides no documentation to support its calculations. That's likely because EnSite's calculation is flatly incorrect. The calculation fails to account for the full statutory period covered, ignores Johnson's off the clock claims, and does not account for Johnson's timely pay, wage statement, or wage notice damages.

"[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs…" 28 U.S.C. § 1332(a). While the party invoking jurisdiction needs to show a "reasonable probability" that the claim exceeds the jurisdictional amount, the "Second Circuit acknowledges this is not a difficult burden because there is 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC,* 124 F. Supp. 3d 237, 241 (E.D.N.Y. 2015) (quoting *Scherer v. Equitable Life Assurance Soc'y of U.S.,* 347 F.3d 394, 397 (2d Cir.2003)).

EnSite calculated Johnson's damages starting January 13, 2018. This period is incorrect. Johnson was subject to a pre-litigation tolling agreement and filed his consent to join *Doyle* on August 15, 2019. Ex. A, Tolling Agreement; *see also*, *Doyle*, No. 4:18-cv-02941, Dkt. No. 32-1. EnSite's calculations do not take these issues into account.

Ms. Braswell states she used data provided on June 5, 2018, to determine overtime damages. Dkt. No. 11-3, ¶ 7. This data does not account for Johnson's employment after this date (even though EnSite own evidence shows Johnson was employed after that date). And post-June 2018 data has not been produced to Johnson's Counsel.

Johnson's complaint alleges he was not permitted to record all hours he worked. EnSite does not specify the amount of overtime hours used to calculate damages. If EnSite's damages are based solely on EnSite's records, they omit work performed off the clock. EnSite further ignores Johnson's claims pursuant to NYLL §§ 191, 195(3), and 195(1).

EnSite's sloppily calculated $56,963 represents a floor for damages, not the ceiling. Considering all the claims and elements of damages that are missing from EnSite's calculations, Johnson easily meets the $75,000 threshold. Because the Court cannot determine with "legal

certainty that plaintiff could not recover the amount alleged" EnSite's attempt to sever diversity jurisdiction must be denied. *Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 818 (S.D.N.Y. 2019) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)).

**D.    EnSite Fails to Establish That Transfer is Appropriate**

EnSite fails to establish by "clear and convincing evidence that transfer is appropriate." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc*., 474 F. Supp. 2d at 481 (S.D.N.Y. 2007), *aff'd sub nom. New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc*., 599 F.3d 102 (2d Cir. 2010). "The Supreme Court has written that the burden is on the movant to show that transfer is warranted, and 'courts should give deference to a plaintiff's choice of forum.'" *Fritz v. Realpage Inc.*, No. 20-CV-7055-CJS-MJP, 2021 WL 3700434, at *2 (W.D.N.Y. Aug. 20, 2021) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  "This deference is even greater where there is a material connection or significant contact between the forum state and the events allegedly underlying the claim, or where the plaintiff's chosen forum is its principal place of business." *Lafarge N. Am., Inc.*, 474 F. Supp. 2d at 486.

"In determining whether the transfer would promote convenience and justice, the Court must consider several factors including:

> (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties."

*Fritz,* 2021 WL 3700434, at *2.

Since EnSite's "first-filed" arguments are moot now that *Doyle* is effectively dismissed, EnSite's caselaw support for transfer is inapplicable. *See Wyler-Wittenberg v MetLife Home*

*Loans, Inc.*, 899 F Supp 2d 235, 243 (EDNY 2012) (reviewing transfer in conjunction with the first-filed rule).

> ### i.   *The convenience of witnesses does not favor transfer*

EnSite is seeking to shift convenience to itself, not to witnesses. EnSite ignores a substantial portion of discovery will consist of non-party witnesses in New York.

According to EnSite, "[i]ndividual contracts between EnSite and its clients generally govern the scope and manner in which work is to be performed for a particular project." Ex. B, EnSite Mt. for Decert. "[A]lthough EnSite's inspectors fall into distinct categories – e.g. Welding Inspector, Chief Inspector, Utility Inspector, and Safety Inspector – and have varying job descriptions, the client determines the actual scope of the job duties for each particular subset of inspectors on each separate project." *Id.* When it found the position convenient, EnSite argued the job duties vary substantially from Inspector to Inspector, project to project:

> "The job duties of a Chief Inspector, Safety Inspector, Material Inspector, Lead/Senior Inspector, Gas/General/Utility Inspector, and Welding Inspector are significantly different, even when working on the same project."

*Id.* at 4.

EnSite has represented in court that the parties will need to obtain discovery related to the actual, day-to-day duties performed by Johnson and prospective class members. As EnSite claims to have no knowledge of the work its employees performed, non-party witnesses and discovery of EnSite's customers in New York will be necessary. "[T]he convenience to non-party witnesses is accorded more weight than that of party witnesses." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016) (citing *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F.Supp.2d 349, 366 (S.D.N.Y.2009)). This will be required if EnSite argues an overtime exemption applies as well as for Johnson to establish he was a manual worker pursuant to NYLL § 191.

17

ii.    *The location of relevant documents does not warrant transfer*

Logistical inconveniences are not reason enough to compel transfer. *Fritz,* 2021 WL 3700434, at *4. "The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *See Aerotel Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 197 (S.D.N.Y.2000). EnSite made no showing or indication that unique circumstances would tilt this factor in its favor. *Id.* (factor neutral where defendant "indicated no special facts that would make this factor weigh in its favor"); *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 441 (S.D.N.Y. 2018) ("[T]he location of documents is entitled to little weight unless [the movant] makes a detailed showing of the burden it would incur absent transfer.") (citation omitted).

iii.    *The SDNY is best suited to adjudicate NYLL claims*

"A forum's familiarity with the governing law [] is one of the least important factors in determining a motion to transfer*." ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 550–51 (S.D.N.Y. 2008); *Freeplay Music, LLC,* 195 F. Supp. 3d at 620 ("factor that is generally given little weight").

Johnson's claims for timely payments, wage statements and wage notices are purely New York statutory claims. "Where, as here, there are state law claims, the forum's familiarity with governing law supports retention of the action." *ESPN, Inc*. 581 F. Supp. 2d at 550–51 (citing *NBA Properties, Inc. v. Salvino, Inc*., 2000 WL 323257, at *9 (S.D.N.Y. March 27, 2000)); *Freeplay Music, LLC*, 195 F. Supp. 3d at 620 (finding this factor neutral where plaintiff brought federal and state law claims).

### iv.   *The remaining factors weigh in Johnson's favor*

EnSite's failure to address the remaining factors indicate they weigh in favor of Johnson. This includes the locus of operative facts and Johnson's choice forum.

"The locus of operative facts is a '**primary factor**' in determining whether to transfer venue" and weighs against transfer." *Mattel, Inc. v. Procount Bus. Servs*., No. 03 Civ. 7234, 2004 WL 502190, at *4 (S.D.N.Y. Mar. 10, 2004) (emphasis added). EnSite nonetheless avoids discussing it. That's because this factor clearly weighs against transfer as Johnson worked in New York and his alleged injuries occurred here.

"Given that courts typically give a plaintiff's choice of forum deference, this factor weighs against transfer." *Freeplay Music, LLC*, 195 F. Supp. 3d at 620. EnSite says this factor should be accorded less deference because of alleged forum shopping. This argument is unsupported and without merit. Aside from the "timing" of Johnson's Complaint, EnSite offers no evidence of forum shopping. EnSite largely ignores that it asked the *Doyle* court to decertify the collective. The fact Johnson sued in this forum based on the applicable venue statutes undercuts EnSite's baseless accusations.

Multiple cases have been filed against EnSite in different jurisdictions post-decertification of *Doyle*. Some of those actions bring representative claims as Johnson does here. EnSite cannot now complain about facing various suits. That is the result it insisted on. The Court should deny EnSite's request to transfer to the Southern District of Texas.

## IV.   CONCLUSION

For the foregoing reasons, EnSite's Motion should be denied in its entirety. In the alternative, Johnson respectfully requests discovery to determine whether EnSite's arbitration agreements constituted impermissible communications and the size of the prospective class.

Dated: August 27, 2021
　　　New York, New York

Respectfully submitted,

/s/ *Frank J. Mazzaferro*

Frank J. Mazzaferro

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Frank J. Mazzaferro
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch, *pro hac vice forthcoming*
11 Greenway Plaza #3025
Houston, Texas 77046
Telephone: (713) 877-8788