UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD JOHNSON, individually and on
behalf of all others similarly situated,

                              Plaintiff,

                 -against-

ENSITE USA, INC.,

                              Defendant.

**MEMORANDUM OPINION
AND ORDER**

21-CV-04437 (PMH)

PHILIP M. HALPERN, United States District Judge:

Richard Johnson ("Plaintiff") commenced this action against Ensite USA, Inc.

("Defendant") on May 17, 2021 (Doc. 1), and filed an Amended Complaint on May 26, 2021 (Doc.

3, "AC"). Plaintiff asserts one claim for relief under the Fair Labor Standards Act ("FLSA") and

four claims for relief under the New York Labor Law ("NYLL").

Before the Court is Defendant's motion to compel Plaintiff to arbitrate his claims under

two written arbitration agreements. (Doc. 11-1, "Def. Ex. A"; Doc. 11-2, "Def. Ex. B"), or in the

alternative, to dismiss or transfer this case.[1] Defendant moved on July 26, 2021 (Doc. 10; Doc. 11,

"Def. Br."), Plaintiff opposed on August 27, 2021 (Doc. 15, "Pl. Opp."; Doc. 16, "Mazzaferro

Decl."), and the motion was fully briefed with Defendant's submission of a reply memorandum of

law in further support of its motion on September 13, 2021 (Doc. 17, "Reply").

For the reasons set forth below, Defendant's motion to compel arbitration is GRANTED.

---

[1] Defendant, in the alternative, moves to (1) transfer this case to the U.S. District Court for the Southern
District of Texas, Houston Division (Def. Br. at 16-18; Reply 6-8); or (2) dismiss this case under the first-
filed rule (Def. Br. at 13-16). Because the Court grants Defendant's motion to compel arbitration, the Court
need not and does not address Defendant's arguments in support of those alternative motions. For that same
reason, the Court also need not and does not address Defendant's arguments regarding (1) dismissal of
Plaintiff's NYLL claims for lack of jurisdiction under the Class Action Fairness Act (*id*. at 10-11); and (2)
Plaintiff's failure to establish numerosity under Federal Rule of Civil Procedure 23 with respect to his
NYLL claims (*id*. at 11-13; Reply at 6).

## BACKGROUND

I.   The Arbitration Agreements

Plaintiff entered into two agreements with Defendant, both entitled: "Arbitration Agreement and Class/Collective Action Waiver." (Def. Exs. A and B). Plaintiff entered into the first agreement on July 12, 2019 (Def. Ex. A), and the second agreement on June 10, 2020 (Def. Ex. B). Because the terms of these agreements are identical, the Court refers to them herein as the "Agreements."

The first paragraph of the Agreements states:

> **1. Agreement to Arbitrate.** [Defendant] and [Plaintiff] agree that ***all Covered Claims . . . will be decided by a single arbitrator of the American Arbitration Association ("AAA") through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided herein***. This is an agreement to arbitrate Covered Claims which shall be governed by the Texas General Arbitration Act (Tex. Civ. Prac. & Rem. Code § 171 *et seq.*) and by the Federal Arbitration Act (9 U.S.C. §§ 1-16), to the extent not inconsistent with the Texas General Arbitration Act.) The mutual agreement to arbitrate contained in this agreement and the continued employment of [Plaintiff] each provide consideration for this Agreement. [Defendant] and [Plaintiff] acknowledge the sufficiency of such consideration. [Defendant] and [Plaintiff] further agree that any other entities or individuals who may be deemed or be alleged to be employers, joint employers, or co-employers of [Plaintiff] under any state or federal law resulting from [Plaintiff's] work on projects for [Defendant] are intended by [Defendant] and [Plaintiff] to be third party beneficiaries of this Agreement. Thus, workplace legal disputes involving such third parties resulting from [Plaintiff's] work on projects for [Defendant] must be arbitrated pursuant to this Agreement.

(Def. Exs. A and B ¶ 1 (emphasis added)). The second paragraph of the Agreements defines "Covered Claims" as follows:

> **2. Claims Covered by This Agreement.** Except as otherwise stated in this Agreement, ***"Covered Claims" are any and all legal claims, disputes or controversies . . . that [Plaintiff] may have, now or in the future, against [Defendant] . . . arising out of or related to this***

> ***Agreement, [Plaintiff's] employment with [Defendant] (including
> subsequent periods of employment following any layoff,
> resignation, termination, or break in service), or the termination
> of [Plaintiff's] employment (including any future period of
> employment) with [Defendant] . . . . "Covered Claims" include but
> are not limited to employee disputes regarding wages and other
> forms of compensation, hours of work***, meal and rest break periods,
> seating, expense reimbursement, leaves of absence, harassment,
> discrimination, retaliation and termination, ***including but not
> limited to claims arising under . . . Fair Labor Standards Act . . .
> and other federal, state and local law relating to employment***.
> Further, "Covered Claims" include any dispute or claim arising out
> of this Agreement, including claims or disputes regarding the
> formation, application, breach, termination, validity, interpretation,
> or enforcement of this Agreement[.]

(*Id.* (emphasis)). Further, the Agreements make clear that they:

> do[] not prohibit or prevent [Plaintiff] from joining, opting into
> and/or participating as a party, claimant and/or class member in any
> lawsuits involving Covered Claims that have already been filed and
> are pending against [Defendant] in any state or federal court as of
> the date [Plaintiff] signs this Agreement (provided such lawsuits
> were not filed in violation of this Agreement).

(*Id.* at 2).

## II.   Factual and Procedural History

Plaintiff was employed by Defendant as a Welding Inspector from January 2017 through

December 2019. (AC ¶ 21). Between March 2018 and June or July 2018, Plaintiff performed work

for Defendant in Yorktown, New York. (*Id.*). According to Plaintiff, Defendant paid him a set

daily rate, regardless of the number of hours he worked in a week. (*Id.* ¶ 76). Plaintiff maintains

that he often worked thirty minutes to an hour (or more) beyond his scheduled shift, was not always

permitted to record this additional time, and was not paid overtime for hours worked beyond forty

in a workweek. (*Id.* ¶¶ 75-78, 94-97). In addition, Plaintiff insists that Defendant failed to provide

him with proper wage statements and notices, and to make timely payment of wages. (*Id.* ¶¶ 81-

82, 90-93, 98-103).

Prior to the commencement of this lawsuit, an individual named Leslie Doyle[2] ("Doyle") brought a substantially similar action against Defendant in the U.S. District Court for the Southern District of Texas on August 24, 2018.[3] (Mazzaferro Decl. ¶ 6; Doyle Lawsuit, Doc. 32-1). The Doyle Lawsuit alleged collective action claims seeking certification of a nationwide class of Defendant's inspectors under the FLSA, as well as claims under the Kentucky Wage and Hour Laws and the Ohio Minimum Fair Wage Act. (Doyle Lawsuit, Doc. 1).

Doyle, like Plaintiff here, alleged that Defendant paid its inspectors a set daily rate, regardless of how many hours they worked. (*Id*. ¶ 5). The parties in the Doyle Lawsuit stipulated to conditional certification, which the court so-ordered on July 8, 2019. (Doyle Lawsuit, Doc. 28). On August 15, 2019, Plaintiff filed his consent to opt into the Doyle Lawsuit. (Doyle Lawsuit, Doc. 32-1). The parties in the Doyle Lawsuit engaged in discovery and participated in two unsuccessful mediations. (Mazzaferro Decl. ¶¶ 7-10). On March 26, 2021, following the completion of discovery, Defendant filed a motion to decertify the collective action in the Doyle Lawsuit, which was granted on May 19, 2021.[4] (Doyle Lawsuit, Docs. 60, 72). On April 23, 2021, Defendant filed a motion for partial summary judgment, which was granted on August 23, 2021. (Doyle Lawsuit, Docs. 65, 77). Also on April 23, 2021, Doyle filed a motion for class certification under Federal Rule of Civil Procedure 23. (Doyle Lawsuit, Doc. 66). On September 13, 2021, all of Doyle's claims were dismissed and the Doyle Lawsuit was terminated. (Doyle Lawsuit, Doc. 79).

---

[2] Plaintiff's counsel also represented the plaintiffs in the Doyle Lawsuit.

[3] *See Doyle v. EnSite USA, Inc.*, No. 18-CV-02941 (S.D. Tex. Aug. 24, 2018) (the "Doyle Lawsuit").

[4] Since the May 19, 2021 decertification decision in the Doyle Lawsuit, Plaintiff's counsel filed twenty-seven individual and representative actions—including this one—against Defendant. (Mazzaferro Decl. ¶ 11).

Prior to that dismissal, however, on May 17, 2021, Plaintiff withdrew his consent in the Doyle Lawsuit. (Doyle Lawsuit, Doc. 70). That same day, Plaintiff commenced this action. (Doc. 1).

## STANDARD OF REVIEW

"In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable to a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "As on a motion for summary judgment, the parties may submit documents in support or opposition of their motion, and the court 'consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party.'" *Cornelius v. Wells Fargo Bank, N.A.*, No. 19-CV-11043, 2020 WL 1809324, at *4 (S.D.N.Y. Apr. 8, 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (alteration in original)).

"If the party seeking arbitration demonstrates its entitlement to arbitration by a showing of evidentiary facts, the burden then shifts to the opposing party to submit evidentiary facts demonstrating there is a dispute of fact showing that the agreement is inapplicable or invalid." *Id.*; *see also Citadel Servicing Corp. v. Castle Placement, LLC*, 431 F. Supp. 3d 276, 284 (S.D.N.Y. 2019) ("[T]he 'party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'" (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010))). Opposition "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Citadel Servicing Corp.*, 431 F. Supp. 3d at 284 (quoting *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)). "'If undisputed facts in the record require[] the issue of arbitrability to be resolved against

5

the [p]laintiff as a matter of law,' then a district court must compel arbitration." *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013) (quoting *Bensadoun*, 316 F.3d at 175 (alterations in original)); *see also Klein v. Experian Info. Sols., Inc.*, No. 19-CV-11156, 2020 WL 6365766, at *3 (S.D.N.Y. Oct. 29, 2020).

The FAA provides in pertinent part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "This provision establishes 'a liberal federal policy favoring arbitration agreements,'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and "reflects the overarching principle that arbitration is a matter of contract," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 223 (2013). *See also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532-33 (2013) (explaining that the FAA "requires courts to enforce the bargain of the parties to arbitrate" (internal quotation marks omitted)); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (noting that "courts must place arbitration agreements on an equal footing with other contracts"); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (observing that the FAA "places arbitration agreements on equal footing with other contracts, and requires courts to enforce them according to their terms" (internal citations omitted)); *Safra Secs., LLC v. Gonzalez*, 764 F. App'x 125, 125 (2d Cir. 2019) ("Whether parties have agreed to arbitrate a matter is fundamentally a question of contractual interpretation.").

"'[U]nder a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration.'" *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 132 (2d

Cir. 2011) (quoting *Baker & Taylor*, 602 F.3d at 490). Waiver has been found when a party engages in protracted litigation that prejudices the opposing party. *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997); *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991)). "[P]rejudice as defined by our cases refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Doctor's Assocs., Inc.*, 107 F.3d at 134. "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring arbitration for dispute resolution." *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985). "'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Id.* (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25). Against this backdrop, it is emphasized that "waiver of arbitration 'is not to be lightly inferred.'" *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995) (quoting *Rush*, 779 F.2d at 887).

## ANALYSIS

Plaintiff does not dispute that his claims fall within the Agreements' scope—nor could he, as the Agreements clearly evince a mutual intent to arbitrate "Covered Claims," and Plaintiff's FLSA and NYLL claims plainly qualify as such. (Def. Exs. A and B ¶ 2). Rather, Plaintiff insists that Defendant's motion to compel arbitration should be denied for two reasons. First, Plaintiff argues that Defendant waived its ability to invoke its right to arbitration by litigating the Doyle Lawsuit. (Pl. Opp. at 5-9). Second, Plaintiff argues that the Agreements amount to "improper and

misleading communications," and are therefore unenforceable. (*Id*. at 5, 9-11). For the following reasons, the Court finds both arguments unavailing.

I.   <u>Waiver</u>

"[A] party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party." *PPG Indus., Inc.*, 128 F.3d at 107. In determining whether Defendant has waived its right to arbitration, the Court considers such factors as "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." *Id*. "There is no bright-line rule, however, for determining when a party has waived its right to arbitration: the determination of waiver depends on the particular facts of each case." *Id*. at 107-08.

Ordinarily, the protracted litigation that operates as a waiver is in and during the litigation that is the subject of the arbitration clause. Such is not the case here. *See PPG Indus., Inc.*, 128 F.3d at 108 ("We have previously stated that the 'prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate.'" (quoting *Doctor's Assocs.,* 107 F.3d at 133)). Here, Plaintiff has suggested that the time spent in the Doyle Lawsuit operates as a waiver of arbitration in this action. (Pl. Opp. at 6-10). Considering without deciding the propriety of such an analysis, the result is not a finding of waiver. Separately, the Agreements at issue were executed on July 12, 2019 and January 10, 2020. (Def. Exs. A and B). The Doyle Lawsuit was commenced on August 24, 2018. (Doyle Lawsuit, Doc. 1). Plaintiff did not opt into the Doyle Lawsuit until August 15, 2019. (Doyle Lawsuit, Doc. 32-1). Simply put, this situation is distinguishable from *PPG Industries, Inc.*, because although the same parties litigated similar issues in an earlier litigation, and while Plaintiff was an opt-in plaintiff in that

action, the Agreements that are at issue here did not exist when the Doyle Lawsuit was commenced. Plaintiff also withdrew his opt in consent in the Doyle Lawsuit on May 17, 2021 (Doyle Lawsuit, Doc. 70), and commenced this action on the same date. Given those facts, Plaintiff should not be heard to complain about waiver by Defendant by participating in the Doyle Lawsuit and/or participating in the Doyle Lawsuit while Plaintiff here was an opt in plaintiff there. Plaintiff has created this new and arbitrable action by his own hand.

A.  Time Elapsed

Plaintiff, in arguing that a substantial amount of time has elapsed from the commencement of the litigation to Defendant's request for arbitration, insists that the relevant time period started on August 15, 2019, when Plaintiff filed his consent to join the Doyle Lawsuit. (Pl. Opp. at 6). But August 15, 2019 cannot be the correct date from which to measure. First, one of the agreements did not come into existence until roughly nine (9) months later. (Def. Ex. B). Second, as to the agreement that was signed approximately twenty-eight (28) days earlier, its terms expressly prevented Defendant from compelling arbitration of Plaintiff's claims in the Doyle Lawsuit. (Def Ex. A ¶ 4). As such, the Doyle Lawsuit was not subject to the terms of an arbitration agreement. However, once Plaintiff filed *this* action on May 17, 2021, the issue of arbitrability, under both Agreements, arose *ab initio*. Therefore, May 17, 2021 is a more appropriate starting point for a waiver analysis. Because Defendant filed its motion to compel arbitration on July 26, 2021—only seventy days later—the Court finds the amount of time elapsed to be insubstantial. *Cf. Cornelius*, 2020 WL 1809324, at *7 (finding no waiver of arbitration agreement where motion to compel arbitration was filed two months after the complaint was filed); *Tokio Marine & Fire Ins. Co. v. M/V SAFFRON TRADER*, 257 F. Supp. 2d 651, 655 (S.D.N.Y. 2003) (finding no waiver of arbitration agreement where motion to compel arbitration was filed "five months after

commencement of the action"); *PPG Indus., Inc.*, 128 F.3d at 108 (finding a "five-month delay, by itself, is not enough to infer waiver of arbitration"). Accordingly, Defendant did not waive its right to compel arbitration because of the lapse of time since the commencement of this action.

     B.  <u>Amount of Litigation</u>

     Plaintiff relies on Defendant's participation in the Doyle Lawsuit in asserting that a substantial amount of litigation has already occurred. (Pl. Opp. at 6-8). But much of the litigation activity that Plaintiff cites occurred before he even opted into the Doyle Lawsuit. (Reply at 3). More importantly, Defendant "simply did not have a right to invoke the Agreements in [the Doyle Lawsuit]" because (1) the Agreements had not been executed prior to the commencement of that action; and (2) the Agreements expressly permitted Plaintiff to join, opt into, and/or participate in any lawsuits that had already been filed and were pending against Defendant. (*Id.*; *see also* Def. Exs. A and B ¶ 4). Said differently, Defendant had no right to compel Plaintiff to arbitrate the Doyle Lawsuit. Accordingly, Defendant's participation in the Doyle Lawsuit is irrelevant to the Court's analysis of this factor.

     What really matters is the amount of litigation that has occurred since the filing of *this* lawsuit. And here, Defendant's motion to compel arbitration was preceded by very little activity. Indeed, Defendant has not filed an answer, nor have the parties engaged in discovery or briefed the merits of Plaintiff's claims. Therefore, the Court finds that this factor weighs against waiver. *See Trustees of Loc. 531 Pension Fund v. Al Turi Landfill, Inc.*, No. 08-CV-01272, 2010 WL 11627389, at *4 (E.D.N.Y. Sept. 20, 2010) (finding no waiver of arbitration agreement where "no depositions have occurred, and no substantive motions were filed until" defendant's motion to compel arbitration). Accordingly, the amount of litigation occurring since the commencement of this action does not operate as a waiver.

C.  Prejudice

Lastly, Plaintiff argues that permitting Defendant to invoke its right to arbitration would result in prejudice because the parties have "exerted substantial time and effort" "over three years of litigation." (Pl. Opp. at 9). But again, Plaintiff measures prejudice from the wrong starting point. As discussed above, Defendant was unable to compel Plaintiff to arbitrate his claims in the Doyle Lawsuit, and therefore, the clock should not start ticking until the filing of this action on May 17, 2021, at the earliest. That being said, the Court is only concerned with the "time and effort" Plaintiff has spent litigating *this* action. That expenditure is quite minimal. While Plaintiff states that he has spent some "time and effort . . . on filing the instant action" (Pl. Opp. at 9), the fact remains that the parties have neither engaged in discovery nor briefed any substantive motions until this one. Moreover, Plaintiff himself chose to withdraw his consent from the Doyle Lawsuit and commence this action. Consequently, Plaintiff cannot now claim prejudice resulting from that decision, and in any event, has not shown prejudice sufficient to excuse himself from arbitration.

II.  Unenforceability

Finally, Plaintiff argues that the Agreements are unenforceable because they were "improper and misleading communications." (*Id*. at 5). "Courts have 'discretionary authority to oversee the notice-giving process' in an FLSA collective action." *OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 600-02 (S.D.N.Y. 2020) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id*. (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). "The same principles that govern communications with putative class members in a class action under Rule 23 also apply to communications with potential opt-in plaintiffs in a collective action

11

brought under the FLSA." *Id.* (quoting *Zamboni v. Pepe W. 48th St. LLC*, No. 12-CV-03157, 2013 WL 978935, at *2 (S.D.N.Y. Mar. 12, 2013)). "A court therefore must examine the context in which the communications were made and the effect of the communications[] in determining whether, and how much, communication should be restricted." *Id.* (citation omitted).

Here, Plaintiff claims that Defendant provided him with the first agreement, which "purport[ed] to waive his rights to pursue class or collective claims," just two months after the motion for conditional certification was filed in the Doyle Lawsuit (Pl. Opp. at 10), and provided him with the second agreement while he was an active plaintiff in the Doyle Lawsuit. (*Id.*). Taken together, Plaintiff insists that the timing of Defendant's actions was "highly suspect," and suggests that Defendant provided him with the Agreements to surreptitiously prevent him from opting into pending litigation. (*Id.*).

Plaintiff's argument, however, cannot withstand the Agreements' plain language, which expressly did "not prohibit or otherwise affect [his] right to participate in a lawsuit or any other action concerning [C]overed [C]laims pending when the [A]greements were executed." (Reply at 5 (citing Def. Exs. A and B ¶ 4)). Accordingly, Plaintiff's attempt to characterize the Agreements as "improper and misleading communications" fails. (Pl. Opp. at 5).

## **CONCLUSION**

In light of the foregoing, the Court GRANTS Defendant's motion to compel arbitration. The action is stayed pending arbitration.

The Clerk of the Court is respectfully directed to: (i) terminate the motion sequence pending at Doc. 10; and (ii) administratively close this case, without prejudice to either party

moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[5]

Dated:  White Plains, New York
        February 15, 2022

SO ORDERED:

_____
Philip M. Halpern
United States District Judge

---

[5] *See Zimmerman v. UBS AG*, No. 17-CV-4503, 2018 WL 4054860, at *6 (S.D.N.Y. Aug. 24, 2018), *appeal dismissed*, 789 F. App'x 914, 915-16 (2d Cir. 2020) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.").